UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| VETERANS FOR PEACE, CHAPTER 9, SMEDLEY BUTLER BRIGADE, through its Member and Representative, PATRICK SCANLON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-10346-LTS |
| THE CITY OF BOSTON and GINA FIANDACA, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

March 6, 2015

SOROKIN, J.

Every year since at least the 1940s, if not earlier, the streets of South Boston have hosted a St. Patrick's Day parade typically beginning at 1:00 P.M. on the Sunday closest to March 17th. Disputes relating to the parade have resulted in substantial litigation. See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, 515 U.S. 557 (1995); S. Boston Allied War Veterans Council v. City of Boston, 297 F. Supp. 2d 388 (D. Mass. 2003). The Allied War Veterans Council (AWV) organizes the annual St. Patrick's Day parade. The event draws hundreds of thousands of people to the streets of South Boston to observe. The AWV exercises its First Amendment right to exclude from its parade messages it does not wish to sponsor or advance.

See Hurley, 515 U.S. at 574 ("the [AWV] clearly decided to exclude a message it did not like from the communication it chose to make").[1]

For many years, the Boys and Girls Club of South Boston have sponsored a 3.1 mile road race on the morning of the day of the parade. The race has commenced at 11:00 A.M. every year for the past several years.

The Veterans for Peace, a not-for-profit organization, has sponsored its own St. Patrick's Day parade on the streets of South Boston. AWV has, or would, exclude at least some of the VFP participants from the AWV parade under AWV's guidelines as identified in Plaintiff's affidavit. See Docket #7 at 1-2. Like the AWV sponsored parade, the VFP parade follows the traditional route down West and East Broadway Streets, returning along East 4th and East 5th Streets, winding around Thomas Park, and concluding on Dorchester Avenue. See Docket #7-5 at 2 (map depicting the routes of both parades). In 2003 Boston Police allowed the VFP to commence its parade immediately following the last marchers in the AWV parade. See S. Boston Allied War Veterans Council, 297 F. Supp. 2d at 389. AWV sued the City and prevailed on its claim that permitting the VFP marchers to follow immediately the AWV parade unconstitutionally associated AWV's parade with the VFP parade. Judge Collings found "as a fact that the manner in which the defendants allowed the Protest Group to march, i.e., directly

---

[1] Plaintiff Scanlon attests that the AWV parade regulations specify:
    1... The Parade Adjutant is vested with the sole authority to include or exclude any unit from the parade, up to and during the parade, unless voted otherwise by the membership of the Council.
    2... No units will be considered as participants that contain anti-government, anti-armed forces, or any political messages.
    3... All signage, attire, banners, flags or other symbols are subject to inspection and approval by the Parade Adjutant, and no unit will be allowed to employ any language that the organizers and the Parade Adjutant deem inappropriate.

    Sexual orientation: it is not the policy of the Council to exclude or deny access to our parade on the basis of sexual orientation. What is not permitted is the inclusion of any individuals or groups that have messages, flags, banners, displays or symbols, attire, or speech in any form, that celebrates, advocates sexual identity or orientation.
Docket #7 at 1-2.

after the last group which was an actual participant in the parade, had the effect of creating the perception among those watching the parade that the Protest Group was, indeed, a part of the Council's parade." Id. at 394. The Court, however, rejected AWV's claim that the Court must prohibit VFP from marching until the crowd observing AWV's parade had "dispersed." Id. at 399. As a remedy, the court enjoined the City "from allowing (by permit or otherwise) future groups who wish to march at the end of the Parade to do so less than one mile behind the . . . end of the AWV's Parade." Id. at 399.

Every year since 2011, the VFP parade has commenced at approximately 3:30 or 4:00 P.M., i.e. when the last marchers in the AWV parade are at least one mile from the starting point of VFP's parade. Each year, Boston Police close the AWV parade route to motor vehicles at 12:30 P.M. They maintain these street closings continuously until the conclusion of the VFP parade. The City reports that approximately eighty percent of the spectators leave the parade route before the VFP parade. The photographs submitted by VFP depicting the parade in a prior year are consistent with the City's estimate.

For 2015, VFP, as it has in prior years, sought a permit for a 12 noon start time. VFP filed its permit request under the City's regulations, on March 25, 2014, nearly one full year prior to the event. Not until months later did the AWV or the Boys and Girls club file their permit applications.

The relevant regulations of the City permit the City to consider only reasonable time, place and manner factors in evaluating a permit application:

> The Commissioner of Transportation shall issue such permit in all cases except where the time, place, and manner are not in conformity with the Rules set forth below, or where the permit would conflict as to time or place with a permit previously issued.

Docket #14-3 at 2 (Traffic Rules and Regulations Article VIII).

The City's regulations also anticipate the possibility that it may need to modify a permit request and, in those circumstances, lay out a procedure for consultation and communication as follows:

> 3. The Transportation Commissioner, in consultation with the Police Commissioner, may modify the requested route or time of a parade based upon the following conditions:
>
> a. When the size of the parade, based upon the expected number of participants and spectators, cannot be safely accommodated on the proposed route because of the capacity of the roadway. The capacity of the roadway shall be determined by taking into consideration the width of the road and the adjacent sidewalk as well as the proximity of structures such as buildings or fences located at the back of the sidewalk.
>
> b. When the route or time conflicts with another parade or other public event to such an extent that the public order or safety is threatened. The determination shall be based upon the inability of the roadway to safely accommodate the expected number of participants and spectators; or the inability to develop safe traffic detours because of the street configuration and traffic congestion in the area.
>
> Any modification of the route or the time shall be narrowly tailored to address the conditions and shall be done in consultation with the permit applicant unless the applicant is unavailable or declines to consult with the Transportation Commissioner.
>
> Any modification to the requested route or time, or any determination by the Transportation Commissioner to deny a permit, shall be in writing to the applicant and shall set forth a basis for such determination.

Docket #14-3 at 3 (Traffic Rules and Regulations Article VIII).

Although VFP filed its application in March of 2014, it heard nothing from the City in all of 2014. According to VFP's counsel, despite emails, phone calls and letters to the City, at no time did any City official <u>ever</u> respond to the VFP's permit or the various inquiries from counsel. On February 12, 2015, the VFP filed this suit seeking, among other things, a preliminary injunction ordering the City to allow VFP to begin its parade at 12 noon. The Court held a status conference on February 19, 2015, established a deadline for the City to respond to the VFP's motion and scheduled a hearing on the motion for March 2, 2015. At the hearing, counsel for the City conceded that at no time prior to the February 19th status conference did any official from

the City ever (1) respond to the VFP regarding its permit application, (2) respond in any way to the various inquiries made by counsel regarding the permit, or (3) invoke the communication process of the City's regulations described above. The record before the Court establishes, without any contradiction from the City, that City officials have conferred with AWV representatives regarding the timing and logistics of the AWV parade. In addition, the City's own submissions establish that the City has prepared a comprehensive and complex public safety and security plan to manage and to protect the potentially one million people that might gather on the streets of South Boston. Preparing such a plan requires substantial time, effort, thought and planning.

A further issue arose at the hearing. The City reported that the historic winter that residents of Greater Boston are enduring might result in a change in the date of the AWV parade. If the AWV parade moves from the March 15th date, then VFP would like to move its parade as well. In short, the VFP is not per se seeking the noon slot on March 15th, but rather requesting to present a parade one hour prior to the AWV parade, although that is not the literal form of its permit application. The Court authorized VFP to file a reply, directed the parties to confer and required the filing of a joint status report by close of business Thursday, March 5, regarding the status of the AWV parade. The parties have now reported that despite good faith negotiations they cannot resolve their dispute. They also reported the AWV parade will proceed on March 15th, but the route will be shorter.

To obtain a preliminary injunction "a trial court must weigh several factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the movant in the absence of an injunction; (3) the balance of the movant's hardship if relief is denied versus the

nonmovant's hardship if the relief is granted; and (4) the effect, if any, of the decision on the public interest." Maine Educ. Ass'n Benefits Trust v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012).

Plaintiffs bring two claims: Count I asserting a violation of their rights under the First and Fourteenth Amendments to the United States Constitution and Count II asserting a violation of the City's traffic regulations. On the preliminary record before this Court, the City appears to have decided that the AWV parade was entitled to the 1:00 P.M. slot, the Boys and Girls Club the 11:00 A.M. slot, and the VFP, despite a specific request for an earlier slot in between the other two events, would receive the 4:00 P.M. slot. Nothing suggests the City ever actually considered allowing the VFP parade to proceed earlier in the day. This raises substantial concerns. While the regulations do not create an express first to file rule, the process applied in this case, favoring events with historical lineage in the absence of any criteria whatsoever defining the contours of when such precedence applies (or even that it does apply) raises the prospect that the City's silence for eleven months in the face of Plaintiffs' application was content or viewpoint discrimination. Insofar as Plaintiffs are more in the nature of a "protest march" than a standard request to parade at a given time, the record suggests the City never considered whether it could accommodate either the VFP parade as proposed or some smaller march in advance of the AWV parade. Both the absence of affirmative evidence from the City indicating such consideration and the failure by anyone from the City to communicate with the Plaintiffs until a handful of days before all the permits issued support this conclusion.

However, the Plaintiffs have failed to demonstrate a likelihood of success on the regulations claim, because the regulations place no limit on how long the City may consider a permit application and do not expressly provide for a first to file rule. Plaintiffs cannot establish a likelihood of success on the merits of the First Amendment claim, at this time, for two different

6

reasons.  First, marching before the AWV parade might infringe AWV's First Amendment rights not to associate with the VFP.  Plainly, a one mile buffer between the two parades, see S. Boston Allied War Veterans Council, 297 F. Supp. 2d at 399, when the VFP parade follows the AWV suffices to distinguish the two parades.  The same is not necessarily true if the VFP parade precedes the AWV parade.  The hundreds of thousands of people gathering on the streets of South Boston to see the AWV parade, seeing another parade, the VFP, in the noon to 2:00 P.M. time period will likely link or associate, in a First Amendment constitutional sense, the VFP with the AWV.  The AWV has a right not to associate with the VFP, see Hurley, 515 U.S. at 573, and has won a lawsuit in this Court seeking not to associate with the VFP.  See S. Boston Allied War Veterans Council, 297 F. Supp. 2d 388.

In these circumstances, VFP has established neither that it has a likelihood of success on the merits nor that the public interest favors the injunction.  The Motion for a Preliminary Injunction is DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge